FREEMAN *v.* FREEMAN.

[66 South. 202.]

1. APPEAL AND ERROR. *Review. Findings of fact. Equitable proceedings. Tenancy in common. Mutual rights. Acquisition of outstanding title.*

     A chancellor's decree on the facts of a case will not be disturbed when amply supported by the testimony.

2. TENANCY IN COMMON. *Mutual rights and duties. Acquisition of outstanding title.*

     Where a party purchased at an administrator's sale of his intestate's land and received a deed from the administrator which was lost and the record thereof destroyed by fire and one of the heirs of the original grantee secured a deed to the land from the heirs of the administrator's intestate, such deed inured to the benefit of all the heirs of the original grantee as tenants in common.

APPEAL from the chancery court of Perry county.

HON. W. H. COOK, Special Chancellor.

Bill for partition by H. J. Preston against G. W. P. Freeman, and others. From a decree ordering partition, defendant appeals.

The facts are fully stated in the opinion of the court.

*A. T. L. Watkins* and *J. H. Davis,* for appellant.

It is manifest that the learned special chancellor assumed that Wm. Freeman owned the land and treated the parties as co-tenants, and as claiming from a common source, which is not shown if appellee had been in court with a stranger, armed with the muniments of title with which appellant is armed, he would stand no sort of show to recover.   He must recover, if at all, on the strength of his ancestor's title and not on a supposed weakness of appellant's title, as he is manifestly trying to.   This is a presumption of law attending all causes, throughout the entire proceeding, in any and all courts.  ·It is so held as far back as 50 Mississippi, page 229; see, also, 53 So. 773, second syllabus, page 816, and many others.

If the heirs of Wm. Freeman could not recover in ejectment with a stranger, armed with the muniments of title with which appellant is armed, they should assuredly fail here, and must fail.   See 42 So. 186; 41 So. 538 and 724; 44 So. 424, and many others.   It was manifest error to attempt to establish Wm. Freeman's title by showing the burning of the courthouse of Perry county away back in the year 1875 or 1876, without some precedent proof that Wm. Freeman had had a deed.   See chapter 91, Mississippi Code 1906.   At all events he should have set out his claim of title in his pleadings, at least furnished competent proof, in the absence of a record title as against one who held a record title, as did appellant, and the appellant's answer put him squarely on notice of his claim, if the official records of the county had not.

We respectfully submit, that there is not a sentence, line, or word of competent evidence that Wm. Freeman owned and possessed the land at the date of his death; a burden that must be met before he can hope to recover, against the only legal title in existence, so far as this

record shows, and we submit that appellant should recover on the first count of his answer.

It appears without dispute or contradiction, that appellant has held the land, openly and notoriously, adversely and hostile, to all the world, beginning at least two years prior to the death of Wm. Freeman, and continuing to date; and if the holding began in the lifetime of Wm. Freeman, and was adverse to him, at his death his children began where he left off, that is, it took only ten years to perfect a title by adverse possession, in the absence of infants or persons of unsound mind, neither of which appear in this cause.

*D. K. McDonald,* for appellee.

In discussing the testimony and applying the law in this case, we will first call the court's attention to the contention of the defendant, G. W. P. Freeman, and appellant in this honorable court. He claims that his father gave him this land, not by any conveyance evidenced by writing, nor by acknowledging before witnesses in any manner recognized by the law, but when he was asked when he delivered the patent over to him and under what circumstances, he could not tell.

The defendant was incompetent as to the alleged gift from the deceased father on account of the statute. We will consider further his testimony. He doesn't seem to be content with his title from his father, notwithstanding his father lived upon it some twenty years and then he had claimed it for about twenty some odd years. He goes out and purchases, without consideration, seemingly, the title of the McKenzie heirs, the man that his father claimed through at an administrator's sale. This does not look very much like he was relying very much upon his gift from his father. The law does not permit one tenant in common to buy in outstanding titles or interest and thereby enjoy the benefits thereof, but assigns it to the benefit of the co-tenancy. These quitclaim deeds if

serving any good purpose, in considering this land or the title thereto inures to the cotenancy and not to any individual cotenant. See 38 Cyc. page 40; 90 Miss. 762; —— So. 987; 81 Miss. 219, 32 So. 317; 68 Miss. 714, 10 So. 37; 65 Miss. 447, 4 So. 345; 7 Am. St. Rep. 673.

We now pass to the second plea or answer of the defendant, and can't see where he can expect the court to give him title by adverse possession. On the other hand, I feel that we have made a very strong case of title by adverse possession to the land that he bought at execution sale. He seems to have permitted his sister Polly to live on and cultivate his or some of his land all of her life, however she was too good and honest to assert a claim of ownership to more than her father left at his death. If there are any of the heirs to this estate that are entitled to this land in controversy by adverse possession, it was Polly Freeman, who lived upon and cultivated some of it all her life. The defendant failed to bring his case within the law of adverse possession, and especially between co-tenants. See *Iler* v. *Ruth,* 3 How. 276; 38 Cyc. pages 21, 22 & 23. Ouster and adverse possession between cotenants. Rule stated. 3 How. 276; 38 Cyc. page 23; 69 Miss. 237, 7 So. 324; 86 Miss. 604, 38 So. 779; 79 Miss. 302, 30 So. 709; 69 Miss. 577, 11 So. 319; 69 Miss. 833, 13 So. 850; 38 Cyc. pages 25 to 34.

REED, J., delivered the opinion of the court.

Appellee filed a bill for partition of a tract of eighty acres of land in Perry county, which he averred was owned by his father, William Freeman, at the time of his death intestate. All the other heirs at law of William Freeman were made parties defendant. Appellant, a son of William Freeman, as a defendant, filed an answer to the bill, in which he denied that his father died seised and possessed of the land, and set up a title thereto in himself by virtue of deeds to him from the heirs of Alexander McKenzie, deceased. He also claimed title to the

land by adverse and hostile possession thereof for more than ten years.

It appears in the proof that William Freeman purchased the land at an administrator's sale of the estate of Alexander McKenzie some time during the years of 1866 or 1867. He went into possession of the land soon after his purchase, and it became a part of his residence property, and was occupied by him until his death in 1885. His widow continued in possession thereof until her death some years after her husband's decease. Then a daughter had the use and possession of the land until she died, which was shortly before the filing of the proceeding for partition. A deed conveying the land to William Freeman could not be found. It is in testimony that the courthouse in Perry county, containing the records in which such deed should have been recorded, was burned after the date of the sale of the land to William Freeman, and all deed records therein destroyed. The deeds under which appellant claimed title to the land were made to him by the McKenzie heirs after the deaths of his father and mother.

The chancellor, upon the hearing, decreed that the land was owned by the heirs at law of William Freeman, deceased, and ordered it sold for division of the proceeds. He also gave judgment against appellant and J. H. Overstreet, another defendant, for an amount due for timber cut and taken from the land, and allowed appellant for taxes he had advanced and paid.

The chancellor's decree as to the title of the land and as to all questions in the case was upon the facts, and we will not disturb it. In truth, his decision is amply supported by the testimony.

As appellant was an heir at law of his father, William Freeman, the conveyance of title to him by the heirs of Alexander McKenzie inured to the benefit of all of the heirs of William Freeman as cotenants.

*Affirmed.*